F. Christopher Austin, Esq.
Nevada Bar No. 6559
WEIDE & MILLER, LTD.
10655 Park Run Drive,
Suite 100
Las Vegas, Nevada 89144
Telephone: (702) 382-4804
Facsimile: (702) 382-4805
CAustin@weidemiller.com

(*additional counsel on signature page*)

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **TELIAX TECHNOLOGY LLC, and THE TOLL-FREE EXCHANGE, LLC,** | **CASE NO. 2:22-CV-00362-CDS-DJA** |
| *Plaintiffs*, | **DEFENDANT AFFINITY NETWORK, INC.'S MOTION TO DISMISS THE SUPPLEMENTAL COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| **v.** | |
| **AFFINITY NETWORK, INC.,** | |
| *Defendant*. | **ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

III.  SUMMARY OF THE ARGUMENT ............................................................ 2

IV.   STATEMENT OF THE RELEVANT FACTS ................................................ 4

    A.    The Method Claims.................................................................4

    B.    The System Claims ................................................................6

V.    LEGAL STANDARDS ........................................................................... 7

    A.    Dismissal Under Rule 12(b)(6).................................................7

    B.    Patent Eligibility Under 35 U.S.C. § 101...................................8

VI.   ARGUMENT:  THE '249 PATENT CLAIMS PATENT-INELIGIBLE SUBJECT
    MATTER ........................................................................................... 9

    A.    Claim 1 of the '249 Patent Is Representative Of All The Claims Of The
        '249 Patent .........................................................................10

    B.    *Alice* Step 1:  The '249 Patent Is Directed To An Abstract Idea ...........................11

        1.    The Representative Claim Is Directed To The Abstract Idea Of
            Routing A Call Based On The Identification Of The Called Party ...........12

        2.    The Representative Claim Recites Generalized Steps To Carry Out
            The Basic Function Of Routing Calls, Not A Specific
            Improvement In Computers ..................................................14

        3.    The Representative Claim Can Be Carried Out In A Person's Mind
            Or Manually ....................................................................17

        4.    Determining Where To Route Calls Based On The Identification
            Of The Called Party Is Analogous To Longstanding Fundamental
            Practices .........................................................................18

    C.    *Alice* Step 2:  The '249 Patent Lacks An Inventive Concept Amounting To
        Significantly More Than The Abstract Idea ..............................................19

        1.    Considered Individually, The Claims' Computer Techniques Are
            Conventional And Well-Understood ........................................20

        2.    Considered As An Ordered Combination, The Elements Of The
            Claims Do Not Include An Inventive Concept ...........................23

    D.    All Of The Claims Of The '249 Patent Are Patent Ineligible.............................24

VII.  CONCLUSION.................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)..................................................................................19

*Alice Corp. Pty. v. CLS Bank Int'l,*
  573 U.S. 208 (2014)........................................................................... *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................7

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341 (Fed. Cir. 2016)..................................................................................19

*Bilski v. Kappos,*
  561 U.S. 593 (2010)..................................................................................7, 8

*BroadSoft, Inc. v. CallWave Communications, LLC,*
  282 F. Supp. 3d 771 (D. Del. 2017)..................................................................................15, 16

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018)..................................................................................20, 23

*Clarilogic, Inc. v. FormFree Holdings Corp.,*
  681 Fed. App'x 950 (Fed. Cir. 2017)..................................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................................9, 10

*Credit Acceptance Corp. v. Westlake Servs.,*
  859 F.3d 1044 (Fed. Cir. 2017)..................................................................................9

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011)..................................................................................12

*Data Engine Techs. LLC v. Google LLC,*
  906 F.3d 999 (Fed. Cir. 2018)..................................................................................7

*Diamond v. Chakrabarty,*
  447 U.S. 303 (1980)..................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................................12

*Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)...................................................................3, 9, 17

*FairWarning IP, LLC v. Iatric Sys.*,
    839 F.3d 1089 (Fed. Cir. 2016)...................................................................8

*Genetic Techs. Ltd. v. Merial LLC*,
    818 F.3d 1369 (Fed. Cir. 2016)...................................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)...................................................................18

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)...................................................................15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012).....................................................................................8

*NetSoc v. Match Grp., LLC*,
    838 Fed. App'x. 544 (Fed. Cir. 2020)........................................................9

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)...................................................................19

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)...................................................................11

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
    657 Fed. Appx. 991 (Fed. Cir. 2016)..........................................................15

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)....................................................................3, 17

*Telinit Techs., LLC v. Alteva, Inc.*,
    No. 14-cv-369, 2015 U.S. Dist. LEXIS 125991 (E.D. Tex. Sept. 21, 2015)............................18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)...................................................................15, 23

*Voip-Pal.com, Inc. v. Apple Inc.*,
    411 F. Supp. 3d 926 (N.D. Cal. 2019), aff'd 828 Fed. Appx. 717 (Fed. Cir. 2020)........ *passim*

**Statutes**

35 U.S.C. § 101 ..................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 7, 10

## NOTICE OF MOTION AND MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Affinity Network, Inc. ("ANI" or "Defendant"), by and through their undersigned counsel, hereby respectfully submits this motion to dismiss Plaintiffs Teliax Technology LLC and The Toll-Free Exchange, LLC's (collectively, "Plaintiffs") Supplemental Complaint (ECF No. 16) with prejudice for failing to state a claim upon which relief may be granted.

As explained herein, Plaintiffs' claims of patent infringement against ANI should be dismissed because all the claims of the asserted patent, U.S. Patent No. 9,807,249 (the "'249 Patent"), are invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, any additional briefing submitted by ANI in support of this Motion, the pleadings, papers, and entire record herein, any oral argument the Court may consider, and upon such matters as may be presented to the Court at or before the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

The '249 Patent is directed to the abstract idea of routing a call based on the identification of the called party. The purpose of this, according to the patent, is to minimize the number of hand-offs and reduce the ultimate cost of the call. The patent accomplishes this using nothing more than generic and conventional network and computer components.

This "invention" is clearly unpatentable under controlling law. Recently, the Federal Circuit affirmed, without opinion, a District Court decision in *Voip-Pal.com, Inc. v. Apple, Inc.*, that a patent directed to routing a communication based on characteristics of the participants was

not only invalid under Section 101, but properly found to be invalid on a motion to dismiss.  The same result is warranted here.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed this lawsuit on February 28, 2022 accusing ANI of infringing the '249 Patent.  ECF No. 1.  Plaintiffs then filed a Supplemental Complaint on May 9, 2022 to add The Toll-Free Exchange, LLC as a co-plaintiff.  ECF No. 16.  The Supplemental Complaint is the operative pleading.  Plaintiffs accuse ANI's "Toll-Free Peering Service" of infringing the '249 Patent.  ANI's response to the Supplemental Complaint is due on June 1, 2022.  ECF No. 19.

## III.    SUMMARY OF THE ARGUMENT

The claims of the '249 Patent are directed to routing a call based on the identification of the called party.   This is an unpatentable abstract idea for several reasons.

***First***, routing a call based on the identification of the called party has already been found by the Federal Circuit to not be patentable in *Voip-Pal.com, Inc. v. Apple Inc.* (affirming a District Court decision under Rule 36 without opinion), because that concept is an abstract idea which fails step one of the *Alice* test.  The District Court also found, which the Federal Circuit affirmed, that where, as here, conventional steps and generic computer components are used to apply the abstract idea, that is not enough to transform an otherwise abstract idea into something patentable under step two of the *Alice* test.

***Second,*** all of the claims at issue here merely recite generalized steps to carry out generic functions.  For example, each claim simply requires receiving a call, querying a database to determine the identity of the called entity, and routing the call to the identified entity.  Each element of the claims is expressed as a function of the desired result, achieved through generically recited steps and the tools of generic network and computing devices, such as (i) a "toll-free exchange" (i.e., a computing device, such as a laptop, personal computer, tablet, phone,

and servers, for routing calls, *see* ECF No. 16-1, '249 Patent at 4:24-26; 10:64-11:8), (ii) a "policy router" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, that provides the routing logic and decision-making of the toll-free exchange, *see id.* at 5:31-34; 6:41-43; 9:26-27; 10:64-11:8), (iii) an originating responsible organization (RESPORG) (i.e., the entity responsible for handling each of the incoming and outgoing calls of the caller, which may be a communications company such as Verizon Wireless, using conventional network components, *see id.* at 5:13-25, 5:55-65), (iv) a terminating RESPORG (i.e., the entity responsible for handling each of the incoming calls of the called toll-free subscriber, using conventional network components, *see id.* at 5:13-25, 5:55-65, 7:12-18) and (v) a database for storing information, such as RESPORG IDs (*see id.* at 5:34-39). *See, e.g. Voip-Pal.com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 968 (N.D. Cal. 2019), aff'd 828 Fed. Appx. 717 (Fed. Cir. 2020) (finding communication routing claims were directed to a patent-ineligible abstract idea where all the computing hardware was described as "generic" and "conventional"); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016) (finding the claims directed to a patent-ineligible abstract idea where the components were described "as either performing basic computer functions … , or performing functions 'known' in the art"). Pairing functional language with repeated reference to generic computer components is a hallmark of claims directed to a patent-ineligible abstract idea.

     ***Third***, it cannot credibly be disputed that these claimed steps can be carried out mentally or with pen and paper. The Federal Circuit has held in *Ericsson v. TCL* and other cases that a process that can be performed in the human mind or by using pen and paper does not become patentable simply because it is later done with a computer. *Ericsson Inc. v. TCL Commun. Tech.*

*Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020), cert. denied, No. 20-1130, 141 S. Ct. 2624 (2021). This too is the exact situation we have here.

**Fourth**, the claims are analogous to the age-old practices of human telephone operators.

**Lastly**, none of the claims include an inventive concept that could transform them into a patent-eligible invention. Considered individually, each claim limitation – such as "receiving," "querying," and "routing" – is a well-understood, routine, and conventional step for carrying out call-routing decisions. Considered as an ordered combination, the claims recite a conventional approach to determine where to route a call: the call is received, identification data is retrieved, and then the call is routed according to the identification data.

A determination on this issue does not require discovery or formal claim construction. To avoid wasting judicial and party resources litigating an invalid patent, ANI respectfully requests that the Court dismiss the Supplemental Complaint with prejudice now.

## IV. STATEMENT OF THE RELEVANT FACTS

The '249 Patent, entitled "Routing Of Toll-Free Numbers Using A Toll-Free Exchange," relates to a method and system of routing toll-free telephone calls based on the identification of the called party or toll-free subscriber. The patent issued on October 31, 2017. The applicant claims that the alleged invention simplifies the process of directing a toll-free call to the called subscriber as well as minimizes the number of networks used and reduces the cost of the toll-free call. ECF No. 16-1, '249 Patent at Abstract, 1:42-46, 2:63-66, 3:2-6.

### A. The Method Claims

The '249 Patent's method claims relate to a method for routing a toll-free call based on the identification of the called party or toll-free subscriber. Representative Claim 1 recites:

> 1. A method for routing toll-free calls through a toll-free exchange, the method, performed by a policy router of the toll-free exchange, comprising:

receiving, from an originating responsible organization (RESPORG), a toll-free call, wherein the toll-free call is directed to a toll-free subscriber that is served by a terminating RESPORG;

querying a database to determine a RESPORG identification associated with the terminating RESPORG, wherein the database is associated with the toll-free exchange and stores the RESPORG identification associated with the terminating RESPORG; and

routing, to the terminating RESPORG, the toll-free call based in part on the RESPORG identification.

ECF No. 16-1, '249 Patent at 13:27-40.

The method includes just three simple and generic steps: (1) receiving a toll-free call, (2) querying a database to determine the identity of the called party or toll-free subscriber via its identification number, and (3) routing the toll-free call to the toll-free subscriber based on its identification number.  This process is implemented entirely through standard, generic components, which were all well-known in the prior art, and that perform only their traditional functions, such as (i) a "toll-free exchange" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, *see* ECF No. 16-1, '249 Patent at 4:24-26; 10:64-11:8), (ii) a "policy router" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, that provides the routing logic and decision-making of the toll-free exchange,  *see id.* at 5:31-34; 6:41-43; 9:26-27; 10:64-11:8), (iii) an originating RESPORG (i.e., the entity responsible for handling each of the incoming and outgoing calls of the caller, which may be a communications company such as Verizon Wireless, using conventional network components, *see id.* at 5:13-25, 5:55-65), (iv) a terminating RESPORG (i.e., the entity responsible for handling each of the incoming calls of the called toll-free subscriber, using conventional network components, *see id.* at 5:13-25, 5:55-65, 7:12-18) and (v) a database for storing information (*see id.* at 5:34-39).  The process merely implements a pre-

existing component well known in the prior art – i.e., the RESPORG identifier of the terminating RESPORG – to route the call to the called toll-free subscriber.  (*Id.* at 1:14-25 ("Introduction" Section explaining that "[t]ypically, toll-free numbers are assigned by 'Responsible Organizations,' or 'RESPORGs'," which have "RESPORG IDs.")  No non-conventional technical details are disclosed, much less claimed, as to how this method claim is accomplished.

**B.    The System Claims**

Similarly, the '249 Patent's system claims relate to a system for routing a toll-free call based on the identification of the called toll-free subscriber.

Claim 17 recites:

> 17. A system for routing a toll-free call using a toll-free exchange, the system comprising:
>
>> at least one session border controller for routing a data portion of the toll-free call within the toll-free exchange;
>>
>> a policy router for determining, based at least on data included within the data portion, a responsible organization (RESPORG) identification (ID) associated with a terminating RESPORG;
>>
>> a service control point for storing the RESPORG ID of the terminating RESPORG;
>>
>> a database for storing enrollment information associated with the terminating RESPORG; and
>>
>> a media gateway server farm having one or more server computing devices for routing a media portion of the toll-free call based in part on the RESPORG ID of the terminating RESPORG.

ECF No. 16-1, '249 Patent at 15:1-17.

Like the method claims, the claimed system is comprised entirely of standard, generic components, which were all well-known in the prior art, and that perform only their basic functions.  Specifically, in addition to the components identified in the method claims, the claimed system also includes the following generic components:  (i) a "session border controller"

(i.e., a switch that "function[s] to route communication data packets and metadata," *see* ECF No. 16-1, '249 Patent at 5:28-31), (ii) a "service control point" (i.e., a database for storing RESPORG IDs, *see id.* at 7:21-24), and (iii) a "media gateway server farm" (i.e., one or more computing devices configured to process voice and media data of a call, *see id.* at 5:39-43, 8:26-56).  Once again, no non-conventional technical details are disclosed, much less claimed, as to how the claimed toll-free call routing is accomplished.

## V.    LEGAL STANDARDS

### A.    Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  That is, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* Although factual allegations must be taken as true when considering a Rule 12(b)(6) motion, legal conclusions are given no deference – those matters are left for the court to decide.  *See Iqbal*, 556 U.S. at 678.

Patentability under 35 U.S.C. § 101 is a threshold legal issue.  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Moreover, "[p]atent eligibility can be determined on the pleadings … when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law."  *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018).  Accordingly, the Section 101 inquiry is properly raised at the pleadings stage if it is clear

from the face of the patent that its claims are directed to patent-ineligible subject matter. *See*, *e.g.*, *Yu v. Apple Inc*. 1 F.4th 1040, 1046 (Fed. Cir. 2021); *see also FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). In those situations, claim construction is not required to find a patent invalid under Section 101. *See*, *e.g.*, *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("Claim construction is not an inviolable prerequisite to a validity determination under § 101.") (internal citation omitted).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patent-eligible subject matter: "any new and useful [1] process, [2] machine, [3] manufacture, or [4] composition of matter." 35 U.S.C. § 101. There are also three categories of subject matter not eligible for patenting: "[1] laws of nature, [2] physical phenomena, and [3] ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014). The purpose of these carve-outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Essentially, abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves a two-step process. *See*, *e.g.*, *Alice*, 573 U.S. 208, 217-18. First, the court must determine whether the claims at issue are directed to a patent-ineligible concept, which would include an abstract idea. *See id.* at 217. Second, if the answer is yes, the court must look to the "elements of each claim both individually and as an ordered combination" to determine if there is an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that

the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original) (internal quotations and citations omitted).

"A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 573 U.S. at 221. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222. As such, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223; *see also Yu*, 1 F.4th at 1043. Relatedly, the Federal Circuit has "made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). The Federal Circuit has also repeatedly confirmed that a claim "that can be performed in the human mind, or by a human using a pen and paper" is not patent-eligible. *Ericsson*, 955 F.3d at 1327; *see also NetSoc v. Match Grp., LLC*, 838 Fed. Appx. 544, 548 (Fed. Cir. 2020).

Where claims are substantially similar and linked to the same abstract idea, courts may focus their analysis on representative claims. *See*, *e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Yu*, 1 F.4th at 1042, n.1 (treating claim 1 as representative for the purposes of its eligibility analysis).

## VI.    ARGUMENT:  THE '249 PATENT CLAIMS PATENT-INELIGIBLE SUBJECT MATTER

The claims of the '249 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. They fail *Alice* step one because the claims of the '249 Patent are directed to the abstract idea of routing a call based on the identification of the called party. They fail *Alice* step two because none of the claims contain an "inventive concept … sufficient to

ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (emphasis added). The claims use generic components in conventional ways to route toll-free telephone calls. They provide no technological improvement. Indeed, the patent expressly acknowledges that pre-existing computing devices and network components are used to perform the claimed method.

Because Plaintiffs have failed to state a claim upon which relief may be granted, ANI respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

### A.    Claim 1 of the '249 Patent Is Representative Of All The Claims Of The '249 Patent

Representative claims may be used in analyzing subject matter eligibility where all of the claims are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348 (internal quotations and citations omitted).

Claim 1 of the '249 Patent ("Claim 1" or the "Representative Claim") is representative of all the claims of the '249 Patent for purposes of analyzing subject-matter eligibility. The Representative Claim recites "[a] method for routing toll-free calls" with the following steps: (1) receiving a toll-free call directed to a toll-free subscriber that is served by a terminating responsible organization (RESPORG), (2) querying a database to determine the RESPORG identifier associated with the terminating RESPORG, and (3) routing the toll-free call to the terminating RESPORG based on the identifier of the terminating RESPORG. The purpose of these steps is to determine where the toll-free call should be routed, by using the identifier of the RESPORG that handles incoming calls for the called toll-free subscriber. Put plainly, the claim is directed to the abstract idea of routing a call based on the identification of the called party.

1    Claim 1 of the '249 Patent is representative because it captures all relevant concepts set

2    forth in the claims of the '249 Patent. *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873

3    F.3d 1364, 1368, n.7 (Fed. Cir. 2017). Independent method Claim 10 is nearly identical to

4    Representative Claim 1 in that it recites the exact same three steps. Likewise, independent Claim

5    17 simply claims a system comprised of generic computing and network components that are

6    used to perform the same method of Representative Claim 1.

7        The dependent claims merely add: (i) additional generic steps for accomplishing the

8    claimed method for routing a toll-free call (i.e., enrolling the RESPORGs in the toll-free

9    exchange (claim 2), determining whether the terminating RESPORG is enrolled with the toll-free

10   exchange system and routing the call based on that determination (claims 6, 7 and 11),

11   monitoring the toll-free call to generate a call record (claims 4 and 12), comparing price rates

12   before routing the call (claims 5 and 13), and receiving and routing a data portion and a media

13   portion of the toll-free call (claims 15, 16 and 19); (ii) additional generic components that

14   perform their basic functions (i.e., a service control point (i.e., a database) for providing the

15   RESPORG identifier in response to the database query (claim 3), a media server farm (i.e., a

16   server) for routing a media portion of the toll-free call (claims 9 and 14), a thrasher (i.e.,

17   computing device) for storing call data (claim 18), and a database for storing additional generic

18   information (claim 20)); and (iii) a step expressly excluded from the claimed process (i.e., using

19   a carrier identification code to route the call (claim 8)).

20       In sum, all of the claims of the '249 Patent should fall together regarding subject-matter

21   eligibility because they are substantially similar to the Representative Claim.

22   **B.    *Alice* Step 1:  The '249 Patent Is Directed To An Abstract Idea**

23       In determining patent eligibility under 35 U.S.C. § 101, the Court must first decide

24   whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217. Under any plausible

reading, the Representative Claim of the '249 Patent is directed to the unpatentable abstract idea of routing a call based on the identification of the called party. At least the following additional factors confirm the abstract nature of that claim (and thus all the claims of the '249 Patent): (1) it recites generalized steps to carry out generic functions, rather than reciting a specific improvement to computers; (2) it can be carried out in one's mind or manually; and (3) it is analogous to the longstanding practice of routing telephone calls.

### 1. The Representative Claim Is Directed To The Abstract Idea Of Routing A Call Based On The Identification Of The Called Party

Step one of the *Alice* test requires analyzing the "focus" of the claims, or their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). The goal is to identify the basic concept at the "heart" of the claims. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas—the basic tools of scientific and technological work that are open to all.").

The '249 Patent describes the "focus" or purported invention as routing toll-free calls based in part on the RESPORG identification, thereby "minimizing the number of hand-offs, increasing the technological capability and reducing the ultimate cost of the toll-free call." ECF No. 16-1, '249 Patent at Abstract; *see also id.* at 1:42-46 ("In general terms, this disclosure is directed to a method of toll-free routing using a toll-free exchange. By using a toll-free exchange instead of a normal call routing, the method minimizes the number of hand-offs and reduces the ultimate cost of the toll-free call"); *id.* at 2:63-66 ("In general terms, this disclosure is directed to a method of routing toll-free telephone calls using a toll-free exchange, thereby minimizing the number of hand-offs and reducing the ultimate cost of the toll-free call."); *id.* at

3:2-6 ("It is therefore a benefit of the present disclosure to minimize the number of networks and simplify the process of directing a toll-free telephone call by providing a toll-free exchange.").

As explained by the '249 Patent itself, the "focus" of the invention is achieved by three generic steps:  (1) "*receiving*, from an originating responsible organization (RESPORG), a toll-free call," (2) *querying a database* to determine a RESPORG identification associated with the terminating RESPORG," and (3) *routing*, to the terminating RESPORG, the toll-free call based in part on the RESPORG identification." *Id.* at 1:50-60 (emphasis added).  The Supplemental Complaint uses the same excerpt to explain the alleged invention.  ECF No. 16, Supp. Compl. at ¶ 12 (quoting column 1, lines 50-60 of the '249 Patent).

The '249 Patent also describes an example of a well-known and widely used system which used the carrier identification code (CIC) of the service provider to route toll-free calls:

> Typically, toll-free calls are routed from the service provider of the originating caller, wherein the service provider does a look up of the carrier identification code (CIC) associated with ultimately handling the toll-free number. A CIC is a unique code that identifies a telephone service provider. The call is thereafter connected to the identified service provider, which routes the call to the toll-free subscriber (sometimes also referred to as the terminating client). Toll-free subscribers are generally assessed a per minute fee based on a Local Exchange Carrier (LEC) tariff plus a margin for each network and service provider that carriers the call to the subscriber.

*Id.* at 1:26-37.

Therefore, as even the '249 Patent acknowledges, the process of routing a call based on the identification of the called party was well-understood, routine, and conventional well before the time of the alleged invention.  The '249 Patent simply swaps one type of called party identifier (CICs) for another (RESPORG IDs).  Accordingly, the '249 Patent's alleged "invention" is directed to a patent-ineligible abstract idea.

**2.      The Representative Claim Recites Generalized Steps To Carry Out The Basic Function Of Routing Calls, Not A Specific Improvement In Computers**

The Representative Claim is also abstract because it recites nothing more than generalized steps to carry out generic call-routing functions and it is not directed to a specific improvement in computers.

Again, the Representative Claim recites:  (1) receiving a toll-free call, (2) querying a database to determine the identification of the RESPORG that handles the incoming calls for the called toll-free subscriber, and (3) routing the call to the identified RESPORG based on the determined identification.  There can be no real dispute that these claimed steps of "receiving," "querying," and "routing" are nothing more than generic steps to carry out the well-known and conventional function of routing toll-free calls.  Indeed, the Federal Circuit has recently affirmed that such generalized, functionally-written steps for routing calls are abstract.  *See*, *e.g.*, *Voip-Pal.com*, 411 F. Supp. 3d at 953-54 (finding that similar "receiving," "accessing," (e.g., querying), and "routing" steps are generic and thus abstract), aff'd 828 Fed. Appx. 717 (Fed. Cir. 2020).

Further, the Representative Claim does not recite any specific implementation of the abstract idea.  The Representative Claim fails to specify how: (1) a toll-free call is received from an originating responsible organization (RESPORG), (2) a RESPORG identification is determined to be associated with the terminating RESPORG, and (3) the toll-free call is routed based on the terminating RESPORG identification.  For example, when the Representative Claim requires "determin[ing]" a RESPORG identification is associated with the terminating RESPORG, it fails to specify any specific "determining" technique.  *See*, *e.g.*, *Voip-Pal.com*, 411 F. Supp. 3d at 955 (finding claims that "contain[] no instructions for how each step of the routing process is accomplished" and instead "simply require[] the functional results of 'receiving,'

'processing,' and 'classifying,' were directed to an abstract idea), aff'd 828 Fed. Appx. 717 (Fed. Cir. 2020); *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017) ("[A] method for collection, analysis, and generation of information reports, where the claims are not limited to how the collected information is analyzed or reformed, is the height of abstraction."); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).  In short, the Representative Claim "recite[s] the *what* of the invention, but none of the *how* that is necessary to turn the abstract ideas into a patent-eligible application."  *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 Fed. Appx. 991, 993 (Fed. Cir. 2016) (emphasis in original).

    Finally, the Representative Claim does not improve any specific computer functionality. Though it recites the use of network and computing devices, the claim is directed to the functional result of determining where to route a toll-free call.  Any recited network or computing device is merely a tool to carry out this function.  Claims written in result-based functional language, reciting no particular way of performing a function, are patent-ineligible. *See*, *e.g.*, *Voip-Pal.com*, 411 F. Supp. 3d at 952 (finding similar claims directed to patent-ineligible subject matter as "recit[ing] nothing more than result-focused steps and generic technology"), aff'd 828 Fed. Appx. 717 (Fed. Cir. 2020); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017) (finding claims were directed to an abstract idea where they "require[d] the functional results of 'converting,' 'routing,' 'monitoring,' and 'accumulating records,'" but "recite[d] only conventional computer components.").

    The Representative Claim shares many of the same steps as those held invalid in *BroadSoft, Inc. v. CallWave Communications, LLC*, 282 F. Supp. 3d 771 (D. Del. 2017).  Like

the claims in *BroadSoft*, the Representative Claim here does not seek to address "a problem specific to telephony technology," but rather only uses previously known technology to perform purely functional steps. *Id.* at 781. The court in *BroadSoft* found that the claims were directed to an abstract idea because "known telephony technology elements perform[ed] the routine functions of accessing stored information and directing the call" in accordance with those stored instructions: "receiving at a call processing system a call from a caller. . .," "cross-referencing the telephone address dialed by the caller with a database in the call processing system to determine if the called party is a subscriber," "accessing the database record for the subscriber. . .," and connecting the call based on a determination made about information regarding the call participants. *Id.* at 780-81.

Rather than detailing an improvement to computer technology, the Representative Claim here invokes generic technology such as a "toll-free exchange" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, see ECF No. 16-1, '249 Patent at 4:24-26; 10:64-11:8), a "policy router" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, that provides the routing logic and decision-making of the toll-free exchange, *see id.* at 5:31-34; 6:41-43; 9:26-27; 10:64-11:8), an originating RESPORG (i.e., the entity responsible for handling each of the incoming and outgoing calls of the caller, which may be a communications company such as Verizon Wireless, using conventional network components, *see id.* at 5:13-25, 5:55-65), a terminating RESPORG (i.e., the entity responsible for handling each of the incoming calls of the called toll-free subscriber, using conventional network components, *see id.* at 5:13-25, 5:55-65, 7:12-18) and a database for storing information (*see id.* at 5:34-39). There can be no credible dispute that these components were well-known many years before the alleged invention, or that the claims

reference them only in terms of their conventional functions. *See*, *e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 612 (The specification does not describe a new telephone, a new server, or a new physical combination of the two [and] [t]he specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms."). And as was the case in *Twilio, Inc. v. Telesign Corp.*, "[c]omputers and generic networking components are merely invoked as tools to carry out this abstract process; there is nothing about [the Representative Claim] that improves the functioning of the computers or networking components themselves." 249 F. Supp. 3d 1123, 1156 (N.D. Cal. 2017) (finding ineligible claims directed to enabling multi-modal communication by looking up and selecting a communication provider associated with a communication destination).

### 3. The Representative Claim Can Be Carried Out In A Person's Mind Or Manually

The Representative Claim is also directed to an abstract idea for the separate reason that computerized activities (i.e., routing calls based on the identification of the called party) can be accomplished mentally or manually. *See, e.g., Ericsson*, 955 F.3d at 1327. That is the nature of the asserted claims – they are directed to processes for receiving and routing toll-free calls that could be performed as mental steps and/or with paper and pen.

The Representative Claim requires: (1) receiving a toll-free call, (2) querying a database to determine the identification of the RESPORG that handles the incoming calls for the called toll-free subscriber, and (3) routing the call to the identified RESPORG based on the determined identification. Those are all steps that a call operator could perform mentally or manually. For example, once a toll-free call is received, an operator could look up the identity of the called toll-free subscriber by comparing the identification information associated with the dialed number with identification information maintained by the operator. Then, the operator could route the

call to the identified called toll-free subscriber.  This is exactly what was found in *Voip-Pal.com*. *See*, *e.g. Voip-Pal.com*, 411 F. Supp. 3d at 955 ("Representative Claim 1 simply discloses the concept of call routing, which can be – and has been, in the past – accomplished manually.").

4.    **Determining Where To Route Calls Based On The Identification Of The Called Party Is Analogous To Longstanding Fundamental Practices**

Courts have consistently held that claims drawn to longstanding practices for organizing human activity are directed to abstract ideas.  *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314, n.5 (Fed. Cir. 2016) (collecting longstanding activities considered abstract ideas).  In *Voip-Pal.com* the claim in question related to "receiving identifiers associated with the caller," "processing the callee identifier," and "directing the call accordingly."  *Voip-Pal.com*, 411 F. Supp. 3d at 957.  As stated in Section 3, *supra,* the court found the claim to be abstract because it was "analogous to preexisting practices of manual call routing, a 'fundamental practice long prevalent in our system,'" "which can be – and has been, in the past – accomplished manually."  *Id.* at 955-56.  Similarly, in *Telinit Techs., LLC v. Alteva, Inc.*, the court found a claim abstract that required: "(1) receiving a data network request; (2) identifying a telephone number associated with that request; (3) signaling a switch to make a call; (4) monitoring the call; and (5) providing a user with notifications if there is a change in the status of the call."  No. 14-cv-369, 2015 U.S. Dist. LEXIS 125991, at *46-47 (E.D. Tex. Sept. 21, 2015).  The Telinit court recognized that such steps were "the function of a telephone operator."  *Id.*

Here, the Representative Claim is analogous to longstanding telephone operator practices. The claim calls for (1) receiving a toll-free call, (2) querying a database to determine the identification of the RESPORG that handles the incoming calls for the called toll-free subscriber, and (3) routing the call to the identified RESPORG based on the determined identification. These can be analogized to longstanding practices occurring in telephone control rooms.  In the

classic setup, operators would monitor incoming calls and route them via switchboard to the appropriate locations.  This process inevitably involved deciding where to route communications (as between a local, long-distance, or toll-free network) based on the identity of the called party (e.g., their area codes or carrier identification codes).  The asserted claims differ only in their computer-based technological environment, which is insufficient to confer patentability on claims analogous to a longstanding practice.  *See*, *e.g.*, *Voip-Pal.com*, 411 F. Supp. 3d at 956-59, aff'd 828 Fed. Appx. 717 (Fed. Cir. 2020).

*    *    *

In sum, the Representative Claim fails *Alice* step one and is directed to an abstract idea.

## C.    *Alice* Step 2:  The '249 Patent Lacks An Inventive Concept Amounting To Significantly More Than The Abstract Idea

Because the Representative Claim and the rest of the claims of the '249 Patent are directed to the abstract idea of routing a call based on the identification of the called party, the claims are invalid unless they embody an "inventive concept" under step two of the *Alice* test. *Alice*, 573 U.S. at 221.  "In step two of the *Alice* inquiry, [the Court] search[es] for an inventive concept sufficient to transform the nature of the claim into a patent-eligible application." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672 (2018) (internal quotations omitted).  "To save a patent at step two, an inventive concept must be evident *in the claims*."  *Id.* (emphasis added).  This inventive concept "must be significantly more than the abstract idea itself," *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); "must be more than well-understood, routine, conventional activity," *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016); "and cannot simply be an instruction to implement or apply the abstract idea on a computer," *BASCOM*, 827 F.3d at 1349.  "If a claim's only 'inventive concept' is the

application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

Here, the recited limitations, whether considered individually or as an ordered combination, do not amount to more than the abstract idea itself. The claimed steps apply the abstract idea to the computer environment using well-known, routine, and conventional activities, which cannot supply an inventive concept.

### 1. Considered Individually, The Claims' Computer Techniques Are Conventional And Well-Understood

The claims of the '249 Patent cannot be saved in the second step of the *Alice* inquiry because they utilize nothing more than generic network and computer components. That is, the claims add "nothing of substance to the underlying abstract idea" beyond applying them to generic computer components to achieve conventional results. *Alice*, 573 U.S. at 227.

Each limitation of Representative Claim 1, viewed individually, clearly shows that the computer implementation is unquestionably generic. Claim 1 recites:

> 1. A method for routing toll-free calls through *a toll-free exchange*, the method, performed by *a policy router* of the toll-free exchange, comprising:
>
> receiving, from *an originating responsible organization (RESPORG)*, a toll-free call, wherein the toll-free call is directed to a toll-free subscriber that is served by *a terminating RESPORG*;
>
> querying *a database* to determine a RESPORG identification associated with the terminating RESPORG, wherein the database is associated with the toll-free exchange and stores the RESPORG identification associated with the terminating RESPORG; and
>
> routing, to the terminating RESPORG, the toll-free call based in part on the RESPORG identification.

ECF No. 16-1, '249 Patent at 13:27-40 (emphasis added).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The claim only requires a combination of a "toll-free exchange" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, *see* ECF No. 16-1, '249 Patent at 4:24-26; 10:64-11:8), a "policy router" (i.e., a computing device, such as a laptop, personal computer, tablet, phone, and servers, for routing calls, that provides the routing logic and decision-making of the toll-free exchange, *see id.* at 5:31-34; 6:41-43; 9:26-27; 10:64-11:8), an originating RESPORG (i.e., the entity responsible for handling each of the incoming and outgoing calls of the caller, which may be a communications company such as Verizon Wireless, using conventional network components, *see id.* at 5:13-25, 5:55-65), a terminating RESPORG (i.e., the entity responsible for handling each of the incoming calls of the called toll-free subscriber, using conventional network components, *see id.* at 5:13-25, 5:55-65, 7:12-18) and a database for storing information (*see id.* at 5:34-39).

**THE TOLL-FREE EXCHANGE**: Claim 1 provides no details regarding the claimed "toll-free exchange." The specification of the '249 Patent, however, makes clear that the claimed "toll-free exchange" "is a system used to route calls" (*id.* at 4:24-26) and can simply be run on a generic, run-of-the-mill computing device:

> FIG. 6 illustrates an exemplary architecture of a computing device that can be used to implement aspects of the toll-free exchange 302. In this disclosure, a laptop or personal computer 140, tablet computing device 140, phone 140, and servers 150 are example computing devices.

ECF No. 16-1, '249 Patent at 10:64-11:1. The fact that any run-of-the-mill computing device can serve as the "toll-free exchange" is further supported by Fig. 4, which shows the toll-free exchange is only comprised of generic computing and network components such as switches, servers, routers, and databases. Notably, neither the claims nor the specification provide any specifics regarding special requirements or features of the toll-free exchange, nor do they describe any improvement to existing technology. Indeed, the specification does just the

opposite and explains that any computing device can be used to implement it. *Id.* at 10:64-11:1. This limitation thus fails to provide an inventive concept.

**THE POLICY ROUTER**: Claim 1 likewise provides no details regarding the claimed "policy router." The specification of the '249 Patent, however, makes clear that the claimed "policy router" is merely a well-understood, routine and conventional computing device. The specification describes the "policy router" as simply a generic "computing device" for routing calls that provides "the routing logic and decision-making of the toll-free exchange." *Id.* at 5:31-34; *see also id.* at 6:41-43; 9:26-27 and 10:64-11:8. Importantly, the specification provides no details of how it routes calls, nor does it describe any improvement to routing technology. This limitation therefore relies on the generic ability of existing routing technologies and fails to provide an inventive concept.

**ORIGINATING AND TERMINATING RESPORGS**: Claim 1 similarly provides no special details regarding the claimed "originating responsible organization (RESPORG)" or the claimed "terminating RESPORG." This is because, as the specification acknowledges, originating and termination RESPORGs and their corresponding IDs were well-established years, if not decades, before the alleged invention.

> Typically, toll-free numbers are assigned by "Responsible Organizations," or "RESPORGs." RESPORGs maintain the registration and routing of individual toll-free numbers that are stored in the SMS-800 database. Accordingly, each RESPORG has access to the SMS-800 database, which is a central registry of all toll-free numbers. In particular, SMS-800 is an administrative entity responsible for assigning RESPORG IDs to RESPORGs and storing toll-free numbers and routing information related to each toll-free number.

ECF No. 16-1, '249 Patent at 1:14-22. Put simply, the originating and terminating RESPORGs are nothing more than "a communications company such as Verizon Wireless." *Id.* at 5:63-65.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE DATABASE**: Databases were also well-understood, routine, and conventional at the time of the claimed invention. Both Claim 1 and the specification of the '249 Patent explain that the claimed database is used merely for the storage of information, such as RESPORG IDs. *Id.* at 5:34-36. Notably, the specification does not provide any description of how the database stores RESPORG IDs, much less in any novel way. Nor does it describe any improvement to existing database technology. This limitation thus relies on the conventional ability of existing database technology to store data, and fails to provide an inventive concept.

Finally, the claims do not require a combination of these well-known physical components in any inventive way. Rather, they simply require that the combination of these components "rout[e] toll-free telephone calls" to "minimiz[e] the number of hand-offs and reduc[e] the ultimate cost of the toll-free call." *Id.* 2:63-66. "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC*, 899 F.3d at 1290-91. That is the case here.

### 2. Considered As An Ordered Combination, The Elements Of The Claims Do Not Include An Inventive Concept

The ordered combination of steps in the Representative Claim fails to supply an inventive concept because it is "a conventional ordering of steps . . . with conventional technology to achieve its desired result." *Two-Way Media*, 874 F.3d at 1339.

In *Voip-Pal.com v. Apple* the claim was directed to "first receiving the identifiers, then processing them, then using the results in some unspecified way to produce the routing message." 411 F. Supp. 3d at 971. The district court in *Voip-Pal.com* invalidated the claim and found the ordering of claim elements "a conventional ordering of steps … implemented on generic technology." *Id.*; *see also Two-Way Media*, 874 F. 3d at 1339 (finding similar routing

claims invalid as directed to merely a "conventional ordering of steps . . . with conventional technology to achieve its desired result.").

Similarly here, the Representative Claim recites using conventional routing components in conventionally ordered steps: receiving a call, querying a database to determine the identity of the called entity, and routing the call to the identified entity. This follows from and is inherent to – i.e., not an inventive concept for applying – the abstract idea of routing a call based on the identification of the called party. *See*, *e.g.*, *Voip-Pal.com*, 411 F. Supp. 3d at 971. Therefore, an inventive concept does not exist in the particular ordering of Plaintiffs' claimed process.

*        *        *

Thus, the Representative Claim fails *Alice* step two and is ineligible under Section 101.

**D.      All Of The Claims Of The '249 Patent Are Patent Ineligible**

While some claims recite limitations beyond those in the Representative Claim, as explained in Section IV(A), *supra*, they all remain directed to the same abstract idea of routing a call based on the identification of the called party. Because no claim's focus departs meaningfully from this abstract idea or adds an inventive concept, all of the claims of the '294 Patent are invalid as directed to patent-ineligible subject matter.

**VII.    CONCLUSION**

For the foregoing reasons, all of the claims of the '249 Patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101. ANI therefore respectfully requests the Court to grant this Motion and dismiss Plaintiffs' Supplemental Complaint with prejudice.

DATED: June 1, 2022

Respectfully submitted,

WEIDE & MILLER, LTD.

*/s/ F. Christopher Austin*
F. Christopher Austin (NV Bar No. 6559)
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144

OF COUNSEL:

Michael J. Zinna, Esq.
(*Pro Hac Vice Application Forthcoming*)
Vincent M. Ferraro, Esq.
(*Pro Hac Vice Application Forthcoming*)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: mzinna@kelleydrye.com
Email: vferraro@kelleydrye.com

*Attorneys for Defendant*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2022 I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

/s/ <i>Brianna Show</i>
Employee of Weide & Miller, Ltd.
