UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Teliax Technology LLC; The Toll-Free Exchange, LLC | Case No. 2:22-cv-00362-CDS-DJA |
| Plaintiffs | |
| v. | Order Granting Defendant's Motion to Dismiss, Denying Defendant's Motion to Stay as Moot, and Closing Case |
| Affinity Network, Inc. | |
| Defendant | [ECF Nos. 29, 30] |

This case concerns plaintiff Teliax Technology LLC's patent, U.S. Patent No. 9,807,249, which discloses "methods and systems 'for routing toll-free calls through a toll-free exchange.'" Suppl. Compl., ECF No. 16 at 4 (quoting Patent Abstract, ECF No. 16-1 at 2). Teliax and plaintiff The Toll-Free Exchange, LLC, sue defendant Affinity Network Inc. for alleged infringement of the '249 patent. *See generally id.* Affinity Network moves to dismiss the supplemental complaint under Federal Rule of Civil Procedure 12(b)(6), based on Affinity Network's position that the '249 patent claims patent-ineligible subject matter. *See generally* Mot. to Dismiss, ECF No. 29. Also before me is defendant's motion to stay the case pending resolution of the motion to dismiss. ECF No. 30. Because I find that the '249 patent indeed concerns unpatentable subject matter, I grant Affinity Network's motion to dismiss and deny as moot its motion to stay the case.

## I.     Relevant Background Information

### a.   *Underlying Dispute*

Teliax is a telecommunications company that provides services to commercial and carrier markets, including routing of telecommunication messages. ECF No. 16 at 3. Teliax filed this action on February 28, 2022, accusing Affinity Network of infringing upon the '249 patent. *See*

*generally* Compl., ECF No. 1. Teliax then filed a supplemental complaint on May 9, 2022, to add The Toll-Free Exchange as a co-plaintiff. ECF No. 16. Teliax and The Toll-Free Exchange assert that Affinity Network's "Toll-Free Peering Service" infringes upon plaintiffs' service, known as the "Toll-Free IPX." *Id.* at 2. The Toll-Free IPX "allows a commercial entity to bypass some or all of the traditional Public Switched Telephone Network . . . when routing toll-free calls." *Id.* at 3. It can "result in significant cost savings and more efficient administration for commercial consumers that regularly receive toll-free calls or text messages, and the toll-free calls or text messages can be routed in a more efficient manner resulting in higher quality and reliability." *Id.*

Underlying the operation of the Toll-Free IPX is plaintiffs' '249 patent, issued by the United States Patent and Trademark Office on October 31, 2017. *Id.* at 3–4; *see also* '249 Patent, ECF No. 16-1 at 2. The '249 patent, entitled "Routing of Toll-Free Numbers Using a Toll-Free Exchange" (ECF No. 16-1), was issued to David Aldworth, the sole named inventor of the patent and president of Teliax. ECF No. 16 at 4. Teliax claims to be the owner of all interest in the '249 patent and declares The Toll-Free Exchange its exclusive licensee. *Id.*

Teliax claims that Affinity Network's infringement of the '249 patent is unsurprising because Affinity Network CEO Gary Fry "was employed as the Chief Operating Officer of Teliax, Inc. from August 2015 – January 2018." ECF No. 16 at 6; *see also* ECF No. 16-6 at 27. Teliax alleges that Fry is "intimately familiar with the operation of plaintiffs' service." ECF No. 16 at 6.

Affinity Network responds to the supplemental complaint by moving to dismiss plaintiffs' causes of action under Rule 12(b)(6). *See generally* ECF No. 29. The motion to dismiss alleges that the claims of the '249 patent are directed to routing a call based on the identification of the called party; thus, the '249 patent claims an unpatentable abstract idea. *Id.* at 7. Specifically, Affinity Network asserts that such claims have already been found to be unpatentable by the United States Court of Appeals for the Federal Circuit in *Voip-Pal.com, Inc. v. Apple Inc.*, 798 Fed. Appx. 644 (Fed. Cir. 2020) (per curiam), because routing calls based on characteristics of the participants is an abstract idea that fails step one of the test prescribed by

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). *Id.* Affinity Network further contends that "the claims at issue [in the '249 patent] merely recite generalized steps to carry out generic functions." *Id.* Affinity Network states that a determination on the patentability of the '249 patent requires neither discovery nor formal claim construction. *Id.* at 9. It urges this court to find the '249 patent directed toward an unpatentable idea and to dismiss plaintiffs' claims with prejudice. *Id.* at 29.

> b. *The '249 Patent*

The '249 patent describes a method for toll-free routing of phone calls using a toll-free exchange, designed specifically for use in commercial telecommunications. *See generally* Patent, ECF No. 16-1. The '249 patent seeks to improve on existing call routing methods (often called "traditional" or "legacy" networks) used to route toll-free calls. ECF No. 16 at 3, ¶ 10. Toll-free telephone numbers are set up such that the called party (also called the "toll-free subscriber") pays for each phone call they receive, rather than the caller paying to place the call. ECF No. 16-1 at 8. To obtain a toll-free number and become a toll-free subscriber, entities must register with Somos, the administrative organization designated by the Federal Communications Commission to handle such inquiries. ECF No. 16 at 2, ¶ 8. The entity must register as a Responsible Organization (RESPORG). *Id.* Such registration allows them to use the 1-800, 1-888, 1-877, etc. prefixed area codes with which we are all familiar. ECF No. 16-1 at 8. The entity is also assigned an identification number (RESPORG ID). ECF No. 16 at 2, ¶ 8. The '249 patent describes a method of routing calls based on the RESPORG IDs of the called party and claims its method does so more efficiently than traditional call routing services. *Id.*

Traditional phone calls go through a Public Switched Telephone Network (PSTN). A legacy routing network, PSTN works by routing phone calls from the caller through various exchanges to the callee. *Id.* Calls routed through the legacy PSTN networks require interconnects between (1) the caller to the local carrier, (2) the local carrier to the one or more, often multiple, other service providers, (3) that provider to a "tandem"—or centralized—

network exchange that hands the call from one carrier to another, (4) the tandem back to the recipient's carrier, and (5) the recipient's local carrier to the recipient themselves. *Id.* at 3, ¶ 10.

Each link of the chain represents a single service provider who needs to route the call over the PSTN. *Id.* at 2, ¶ 8. They generate their own charges and invoices for their service. *Id.* There may also be some loss of information (or inefficiencies) for each additional service provider. *Id.* The '249 patent seeks to cut out the middlemen and effectuate cost savings for high-volume commercial callers. For example (traditional PSTN illustration in solid arrows on top, '249 patent in dashed arrows at bottom):



Fig. 3, ECF No. 16 at 4.

The '249 patent makes twenty claims, including three independent claims (claims 1, 10, and 17) and seventeen dependent claims, which either reference the independent claims (claims 2–4, 6, 8–9, 11–12, 14–15, and 18–20) or reference other dependent claims that themselves reference the independent claims (claims 5, 7, 13, 16). Claim 1 of the '249 patent claims the method for routing toll-free calls through a toll-free exchange. ECF No. 16-1 at 14. That method involves three steps:

> *receiving*, from an originating responsible organization (RESPORG), a toll-free call, wherein the toll-free call is directed to a toll-free subscriber that is served by a terminating RESPORG;

*querying* a database to determine a RESPORG identification associated with the terminating RESPORG, wherein the database is associated with the toll-free exchange and stores the RESPORG identification associated with the terminating RESPORG; and

*routing*, to the terminating RESPORG, the toll-free call based in part on the RESPORG identification.

*Id.* Claim 10 of the '249 patent claims the method for routing toll-free calls without using a carrier identification code but otherwise contains substantively similar language to Claim 1. *Id.* Claim 17 of the '249 patent claims a system for routing a toll-free call using a toll-free exchange and describes the hardware components necessary to effectuate the method described by Claims 1 and 10. *Id.*

## II.   Legal Standards

### a.   Motion to Dismiss under Rule 12(b)(6)

A defendant may move to dismiss an action for a plaintiff's failure to allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In ruling on a Rule 12(b)(6) motion, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### b.   Motion to Dismiss for Patent Ineligibility Challenges Under 35 U.S.C. § 101

Affinity Network argues that the '249 patent fails to claim patent-eligible subject matter under 35 U.S.C. § 101, considering the Supreme Court's decision in *Alice*. ECF No. 29 at 9–29. Patent eligibility under § 101 is an issue of law. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). "However, the Federal Circuit has identified certain factual questions as underlying the § 101 analysis." *Voip-Pal.Com, Inc. v. Apple Inc.* (*Voip-Pal.Com I*), 375 F.

Supp. 3d 1100, 1124 (N.D. Cal. 2019) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018). Accordingly, a district court may resolve the issue of patent eligibility under § 101 by way of a motion to dismiss. *See, e.g., Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (affirming determination of ineligibility made by district court on 12(b)(6) motion); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014) (same).

Although claim construction is often desirable, and may sometimes be necessary, to resolve whether a patent claim is directed to patent-eligible subject matter, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). When a court has a "full understanding of the basic character of the claimed subject matter," the question of patent eligibility may properly be resolved on the pleadings. *Content Extraction*, 776 F.3d at 1349.

          c.   *Substantive Patentability Standards under 35 U.S.C. § 101*

                 i.   *Patent-Eligible Subject Matter Under 35 U.S.C. § 101*

35 U.S.C. § 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under § 101, the scope of patentable subject matter encompasses "any new or useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof." *Id.* (quoting 35 U.S.C. § 101). These categories are broad, but they are not limitless. Section 101 "contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

These three categories of subject matter are patent-ineligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012) (citations omitted). Allowing patent claims for such purported inventions would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.*

1   However, the United States Supreme Court has also cautioned that "[a]t some level, all

2   inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or

3   abstract ideas." *Id.* Accordingly, courts must "tread carefully in construing this exclusionary

4   principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 71).

5       The Supreme Court has "refined the 'framework for distinguishing patents that claim

6   laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible

7   applications of those concepts'" in *Alice. Voip-Pal.Com I*, 375 F. Supp. 3d at 1125 (quoting *Alice*, 573

8   U.S. at 217). This framework involves a two-step inquiry as follows:

> First, we determine whether the claims at issue are directed to one of those
> patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims
> before us?" To answer that question, we consider the elements of each claim both
> individually and "as an ordered combination" to determine whether the
> additional elements "transform the nature of the claim" into a patent-eligible
> application. We have described step two of this analysis as a search for an
> "'inventive concept'"—*i.e.*, an element or combination of elements that is
> "sufficient to ensure that the patent in practice amounts to significantly more
> than a patent upon the [ineligible concept] itself."

14   *Alice*, 573 U.S. at 217–18 (alterations in original) (citations omitted); *see also In re TLI Commc'ns LLC*

15   *Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (describing and applying "the now familiar two-

16   part test described by the Supreme Court in *Alice*").

17       *ii.*  Alice *Step One – Identification of Claims Directed to an Abstract Idea*

18       There is no bright-line test to separate abstract ideas from concepts that are sufficiently

19   concrete as to require no further inquiry under the first step of the *Alice* framework. *Voip-Pal.Com*

20   *I*, 375 F. Supp. 3d at 1125 (collecting cases). Thus, in evaluating whether claims are directed

21   toward patent-ineligible abstract ideas, courts generally begin "by compar[ing] claims at issue

22   to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v.*

23   *Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

24       The first step of the *Alice* inquiry is a meaningful one wherein the court must identify,

25   based on the specific facts at issue in a case, "a substantial class of claims [which] are *not*

26   directed to a patent-ineligible concept." *Enfish*, 822 F.3d at 1335. The court's task is not to

determine whether claims merely involve an abstract idea at some level, *see id.*, but rather to examine the claims "in their entirety to ascertain whether their character as a whole is directed to some excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

                  *iii.*    Alice *Step Two – Evaluation of Abstract Claims for an Inventive Concept*

Even if a claim involves an abstract idea, that does not foreclose its patentability. "A claim drawn to an abstract idea is not necessarily invalid if the claim's limitations—considered individually or as an ordered combination—serve to 'transform the claims into a patent-eligible application.'" *Voip-Pal.Com I*, 375 F.3d at 1127–28 (quoting *Content Extraction*, 776 F.3d at 1348)). Thus, the second step of the *Alice* analysis asks whether the claim contains an element or combination of elements that "ensure[s] that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18.

Transforming an abstract idea to one that is patent-eligible requires more than simply reciting the idea followed by "apply it." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72). Likewise, "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" when those components simply perform their "well-understood, routine, [and] conventional" functions. *In re TLI Commc'ns LLC*, 823 F.3d at 613 (citation omitted). "The question of whether a claim element or combination of elements is well-understood, routine[,] and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368. This inquiry "goes beyond what was simply known in the prior art." *Id.* at 1369. Furthermore, "limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable." *Bilski*, 561 U.S. at 612 (citing *Parker v. Flook*, 437 U.S. 584 (1978)). Attempts to "limit the use of the abstract idea to a particular technological environment" are insufficient to render an abstract idea patent-eligible. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

Finally, a "non-conventional and non-generic arrangement of known, conventional pieces" can amount to an inventive concept. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also Amdocs (Israel) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016) (wherein claims received an inventive concept because they contained "specific enhancing limitation[s] that necessarily incorporate[d] the invention's distributed architecture," and the use of such distributed architecture transformed the claims into patentable subject matter), *cert. denied*, 138 S. Ct. 469 (2017). This is also a fact-specific determination.

### iv.   *Representativeness*

When claims of a patent are substantially similar and linked to the same abstract idea, courts may focus their analysis on representative claims rather than analyzing each claim of the patent at issue. *See, e.g., Content Extraction*, 776 F.3d at 1348 (focusing the *Alice* analysis on a single representative claim); *Voip-Pal.Com I*, 375 F. Supp. 3d at 1129 ("the Court need not individually analyze every claim if certain claims are representative.") (citing *Alice*, 573 U.S. at 224–28). Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer*, 881 F.3d at 1365 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016)).

### v.   *Preemption*

In addition to these principles, "courts sometimes find it helpful to assess claims against the policy rationale for § 101. *Voip-Pal.Com I*, 375 F. Supp. 3d at 1129. The concern that undergirds § 101 jurisprudence is preemption. *Alice*, 573 U.S. at 223. Thus, courts have readily concluded that a claim is not patent-eligible when the claim is so abstract that it preempts "use of [the claimed] approach in all fields" and "would effectively grant a monopoly over an abstract idea." *Bilski*, 561 U.S. at 612. However, the inverse is not true: "[w]hile preemption may signal patent ineligible

1 subject matter, the absence of complete preemption does not demonstrate patent eligibility."

2 *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (alteration in original).

3         d.   *Leave to Amend*

4         If the court determines that a complaint should be dismissed, it must then decide

5 whether to grant leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure states that

6 leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying

7 purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or

8 technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and

9 internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a

10 district court should grant leave to amend even if no request to amend the pleading was made,

11 unless it determines that the pleading could not possibly be cured by the allegation of other

12 facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend should

13 generally be denied only if allowing amendment would unduly prejudice the opposing party,

14 cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG*

15 *Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

16 **III.    Analysis**

17         Having considered the briefing together with the parties' oral arguments on the motion[1],

18 I find that Claim 1 of the '249 patent is directed toward the abstract idea of routing a call based

19 on the RESPORG ID of the called party under *Alice* step one and claims no patent-eligible

20 innovative concept under *Alice* step two. I further find that Claim 1 of the '249 patent is

21

---

22 [1] At oral argument, Affinity Network submitted to the court a composite exhibit consisting of thirty-six
23 PowerPoint slides. ECF No. 45 at 15–16. It used the presentation as a demonstrative aid during the
hearing. *Id.* Plaintiffs did not object to Affinity Network's use of the slides as a demonstrative aid, ECF
24 No. 45 at 64–65, but now object to admission of the presentation as evidence as well as some of the
statements of law or fact within those slides. *See generally* Pl's Notice, ECF No. 42. I agree that on a motion
25 to dismiss, I may not consider external evidence such as the PowerPoint slides but render no judgment as
to Affinity Network's characterizations of law or fact. I did not consider the PowerPoint slides or any
26 analysis therein in making the determinations herein.

representative of the patent's nineteen other claims and ultimately conclude that the '249 patent is directed toward patent-ineligible subject matter.

      a.    Alice *Step One for Claim 1 of the '249 Patent*

           i.    *The Parties' Arguments*

Affinity Network contends that the '249 patent is directed to the patent-ineligible abstract idea of routing a call based on the identification of the called party. ECF No. 29 at 2. Affinity lists four reasons to support its contention: (1) routing a call based on the identification of the called party was deemed an abstract idea and unpatentable when the Federal Circuit summarily affirmed the district court's order in *Voip-Pal.Com, Inc. v. Apple Inc.* (*Voip-Pal.Com II*), 411 F. Supp. 3d 926, 951 (N.D. Cal. 2019); (2) all of the claims at issue in the '249 patent recite generalized steps to carry out generic functions, rather than specific improvements to hardware in the Toll-Free Exchange; (3) the claim methods can be performed mentally or with pen and paper; and (4) the abstract idea of routing calls based on the identification of the called party is analogous to human telephone operators. *Id.* at 2–4.

Plaintiffs respond that Affinity's description of the '249 patent as "routing a call based on the identification of the called party" is an oversimplification. ECF No. 31 at 1. They assert that the claims of the '249 patent are not directed to an abstract idea and instead "address an improved, innovative process for a specific implementation of toll-free routing." *Id.* They do not merely claim the idea of routing a call, but rather are directed toward "a specific implementation of a solution to a problem in the [art]." *Id.* (citing *Enfish*, 822 F.3d at 1338). Finally, plaintiffs note that Affinity Network's other three reasons fail to render the challenged claims abstract. *Id.* at 10.

           ii.    *Findings*

Step one of the *Alice* inquiry considers the claims "in light of the specification" to determine "whether their character as a whole is directed to excluded subject matter." *Enfish*, 822 F.3d at 1335 (citation omitted). I am careful not to express the claim's focus at an unduly "high level of abstraction . . . untethered from the language of the claims," but rather in parallel

with the level of generality or abstraction expressed in the claims themselves. *Id.* at 1337; *see also Thales Visionix v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (requiring courts to "ensure at step one that [they] articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful"). My inquiry therefore "centers on determining the 'focus' of the claims.'" *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017), *cert denied*, 139 S. Ct. 378 (2018).

"Three themes" in the jurisprudence of the Supreme Court and the United States Court of Appeals for the Federal Circuit "demonstrate that [] Claim 1 is directed to an abstract idea: (a) the claimed method discloses only generalized steps drafted in purely functional terms; (b) it is analogous to well-known, longstanding practices, and (c) it does not recite an improvement in computer functionality." *Voip-Pal.Com II*, 411 F. Supp. 3d at 951 (quoting *Amdocs*, 841 F.3d at 1294)). Specifically, Claim 1 discloses a method of routing toll-free calls through a toll-free exchange. ECF No. 16-1 at 15. The method is comprised of three steps:

> (1) **receiving** a qualifying call (that is, one from an originating RESPORG and directed to a toll-free subscriber that will be served by a terminating RESPORG),
> (2) **querying** a database to determine the identity of the called party (that is, determining the RESPORG ID associated with the terminating RESPORG), and
> (3) **routing** the call to the called party based in part on the identification of the called party.

*Id.* The focus of Claim 1 informs that the '249 patent is directed to the abstract idea of routing a call based on the RESPORG ID of the called party.

Further, Claim 1 is abstract because it discloses generalized steps to carry out generic functions, it is analogous to the long-standing practice of human telephone operators, and it fails to describe any actual improvements in hardware or software that enable its methods. "Although there is no 'single, universal' definition of an abstract idea, the Court looks to past patentable subject matter cases as helpful guideposts." *Voip-Pal.Com II*, 411 F. Supp. 3d at 951 (quoting *Amdocs*, 841 F.3d at 1294)).

The '249 patent also discloses generalized steps to be performed using hardware generic to call routing. "Generalized steps to be performed on a computer using conventional computer activity are abstract." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). The Federal Circuit has held that specifications which "are not directed to a specific improvement to computer functionality" and fail "to provide any technical details for the tangible components, [and] instead predominantly describe[] the system and methods in purely functional terms" concern unpatentable subject matter. *TLI Commc'ns*, 823 F.3d at 612. Claim 1 here describes the purported invention in broad, generic functional terms but fails to identify *how* those ends are achieved, with the specification being no clearer. Claim 1 describes utilizing the RESPORG ID of the called party to route calls as the specific method claimed by the '249 patent. Plaintiffs assert that the challenged claims instruct a user to "determine a RESPORG [ID] – a term which is defined and explained in the patent . . . to be a specific, non-generic characteristic." ECF No. 31 at 12:5–7 (internal quotation marks omitted). Yet RESPORG IDs were not uniquely devised by plaintiffs—they are assigned by SMS-800, "an administrative entity responsible for assigning RESPORG IDs to RESPORGs and storing toll-free numbers and routing information related to each toll-free number." ECF No. 16-1 at 8:20–23.

Plaintiffs argue that "the challenged claim . . . details both the 'how' and the 'why' of using the RESPORG ID as a central element of the claimed technology." ECF No. 31 at 13:11–12. Yet plaintiffs fail to describe the specific language in Claim 1 or in the specifications of the '249 patent that details the "how" of using RESPORG ID. The querying and routing steps of Claim 1 use RESPORG IDs to carry out the method, but the claim "contains no instructions for how each step of the routing process is accomplished" and instead "simply requires the functional results" of receiving, querying, and routing based on the RESPORG ID. *Voip-Pal.Com II*, 411 F. Supp. 3d at 955. In order "to transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such a law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" *Mod Stack LLC v. Aculab*,

*Inc.*, 2019 WL 3532185, at *2 (quoting *Mayo*, 566 U.S. at 72)). Plaintiffs' level of specificity—claiming method steps without reference to how they are physically carried out—fails to transform the claim into a patentable one.

Finally, plaintiffs' argument that claims which "represent an improvement upon an existing technology are not abstract," seemingly conflates the results of using RESPORG IDs to route calls with the abstract idea of using RESPORG IDs to route calls. ECF No. 31 at 14:3–4 (citing *BroadSoft, Inc. v. CallWave Commc'ns, LLC*, 282 F. Supp. 3d 771, 781 (D. Del. 2017), *aff'd*, 739 F. App'x 985 (Fed. Cir. 2018)). There is no language in Claim 1 suggesting that plaintiffs have designed a novel component used in the receiving, querying, or routing steps. A claim that "recite[s] the *what* of the invention, but none of the *how* that is necessary to turn the abstract ideas into a patent-eligible application" is directed toward a patent-ineligible abstract idea. *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 Fed. Appx. 991, 933 (Fed. Cir. 2016) (affirming district court's dismissal of infringement suit under § 101 after finding nothing in claim 1 that "add[ed] anything more to the abstract idea[s] of storing, gathering, and analyzing data").

That is, "a claim for a *new* abstract idea is still an abstract idea," *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977 (D. Nev. 2021), *aff'd* 2022 WL 1513310 (Fed. Cir. May 13, 2022), and along the same lines, an improved abstract idea is still nonetheless an abstract idea. I agree with Affinity Network's position that "plaintiffs err by focusing on asserted benefits of the claims as opposed to the language of the claims," ECF No. 33 at 8, because plaintiffs have not demonstrated that the claim language itself describes how the steps of Claim 1's method may be carried out. Instead, the claim language describes generic steps using well-known hardware arranged to utilize an input, the RESPORG IDs, which plaintiffs themselves did not create. "In short, because the claim is bereft of the critical 'how it does it' aspect of the invention, Representative Claim 1 is directed to the abstract idea of routing a communication" based on the RESPORG IDs of the participants. *Voip-Pal.Com II*, 411 F. Supp. 3d at 955.

Second, the analogousness of Claim 1 to methods performed by human telephone operators further supports my conclusion that Claim 1 is directed to an abstract idea. *Id.* Courts often compare technology claims to their manual counterparts in determining whether claims are directed to an abstract idea. *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016) (concluding that claims related to "receiving, screening, and distributing email" were directed to an abstract idea because they were analogous to the steps performed by individuals in corporate mailrooms). Because the claims in *Symantec* were directed to "fundamental practices long prevalent in our system and methods of organizing human activity," they were directed to an abstract idea. *Id.* at 1318 (internal quotation marks omitted). Similarly, Claim 1 is analogous to preexisting practices of manual call routing, a fundamental practice long prevalent in modern systems of telecommunication.

Plaintiffs attempt to distinguish the '249 patent from the generic methods utilized by human telephone operators by stating that "the challenged claims are directed to a new and innovative process . . . including techniques for the use of buy-rates and floor-rates to create an efficient economic interchange between participants." ECF No. 31 at 16:24–27. However, Affinity Network notes that "call operators ha[d] been routing calls based on buy-rates and floor-rates for decades" before the '249 patent. ECF No. 33 at 9:13–14. Plaintiffs do not assert that they have some specialized computer or other technology to enable the use of buy-rates and floor-rates, nor do they point to specific claim language that differentiates their use of those terms from the historical practices of call operators.

Affinity Network notes that Claim 1's method "can be analogized to longstanding practices occurring in telephone control rooms" and that "[t]he asserted claims differ only in their computer-based technological environment." ECF No. 29 at 19. While the asserted claims differ in that they use RESPORG IDs to route calls rather than area codes or caller identification codes, which were typically used by human telephone operators, the use of RESPORG IDs is not sufficiently distinctive to separate the claimed method from the similar longstanding practice.

1    And, neither the RESPORG IDs nor the hardware used to carry out the method of Claim 1 were

2    created by plaintiffs.

3           Claim 1 discloses only generalized methods carried out by generic components drafted in

4    functional terms, its method is analogous to a longstanding practice of telephone control rooms

5    routing calls based on the identity of the called party, and it discloses no improvement in

6    computer functionality that enables such a method to be effectuated. I thus conclude that Claim

7    1 of the '249 patent is directed to the abstract idea of routing a call based on the RESPORG ID of

8    the called party.

9           b.   Alice *Step Two for Claim 1 of the '249 Patent*

10          Because I find that under *Alice* step one, Claim 1 of the '249 patent is directed to an

11   abstract idea, I move to step two of the *Alice* test and search for "an inventive concept" that is

12   "sufficient to ensure that the patent in practice amounts to significantly more" than a patent

13   upon the abstract idea itself. *Alice*, 573 U.S. at 217–18. Stated otherwise, my analysis at *Alice* step

14   two is a search for an inventive concept.

15          i.   *The Parties' Arguments*

16          Affinity Network contends that none of the claims of the '249 patent include an

17   inventive concept that may transform them into a patent-eligible invention because the claims

18   recite a conventional approach to determine where to route calls. ECF No. 29 at 4. Plaintiffs

19   respond that Affinity Network cannot disprove the factual allegations in the supplemental

20   complaint under the "clear and convincing standard" (as to whether a claim element or

21   combination of elements is well-understood, routine, and conventional to a skilled artisan in the

22   relevant field). ECF No. 31 at 2 (citing *Berkheimer*, 881 F.3d at 1368). Plaintiffs add that Affinity

23   Network focuses on the hardware elements and only briefly addresses the individual use of the

24   RESPORG ID. *Id.* at 18:2–5.

25

26

*ii. Findings*

Claim 1 does not recite an inventive concept. "To save the patent at step two, an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327. In assessing whether a claim recites an inventive concept, I must consider its elements "both individually and as an ordered combination." *Alice*, 573 U.S. at 217. Accordingly, I first analyze the individual claim elements of Claim 1 and then turn to the ordered combination of those elements.

*A.  The Individual Claim Elements Do Not Provide an Innovative Concept*

I find that routing a call based on the RESPORG IDs of the called party is not an inventive approach in achieving the desired result of routing toll-free calls through a toll-free exchange. To supply an inventive concept, a claim element "must be more than well-understood, routine, conventional activity." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016). It "cannot simply be an instruction to implement or apply the abstract idea on a computer." *BASCOM*, 827 F.3d at 1349. For example, it may be found in an "inventive set of components or methods," "inventive programming," or an inventive approach in "how the desired result is achieved." *Elec. Power Grp.*, 830 F.3d at 1355. On the other hand, "conventional steps, specified at a high level of generality, [are] not enough to supply an inventive concept." *Alice*, 573 U.S. at 222 (internal quotation marks omitted). Nor are "generic computer, network, and Internet components" inventive. *BASCOM*, 827 F.3d at 1349. Yet, conventional steps and generic computer components are all that Claim 1 describes.

As already discussed, Claim 1 identifies three steps to accomplish its method: receiving, querying, and routing. ECF No. 16-1 at 13:27–40. All three steps have been used in the prior art. The differentiating factor of plaintiffs' patent is simply an element therein: utilization of the RESPORG IDs in the querying and routing steps. Claim 1 also describes physical elements to carry out its method: a toll-free exchange, a policy router of the toll-free exchange, an originating RESPORG, a terminating RESPORG, and a database. *Id.* Each of these physical elements has also been used in the prior art and can likewise be described in generic computing terms.

A toll-free exchange, which is a "system used to route calls", *id.* at 4:24–26, can be any computer. *See id.* at 10:64–11:1 (illustrating "exemplary architecture of a computing device that can be used to implement aspects of the toll-free exchange" and describing "a laptop or personal computer, tablet computing device, phone, and servers" as examples). Such an exchange may be comprised of originating and terminating switches, a policy router, a database, a server, and a thrasher. Figure 4, *id.* at 5. Neither the '249 patent's claims nor its specification require any special technical requirements or describe unique features of the toll-free exchange, nor do they list any improvements to existing components of the exchange.

The policy router is similarly described in generic functional terms: it "includes the routing logic and decision-making of the toll-free exchange," *id.* at 10:32–34, "provides the SCP with the toll-free number", *id.* at 11:34–36, "informs the originating switch to attach the IP address of the terminating RESPORG", *id.* at 11:18–20, and "is configured to route calls to terminating RESPORGs." *Id.* at 12:25–28. The specification does not describe how the policy router carries out these functions.

Thus, the only possible inventive concept within the individual elements of Claim 1 would be the utilization of RESPORG IDs in the querying and routing steps. But the originating and terminating RESPORGs are simply entities external to plaintiffs. *See, e.g., id.* at 10:63–65 ("[I]n some embodiments, the originating RESPORG may be a communications company such as Verizon Wireless."). RESPORGs and their IDs "were well-established years, if not decades, before the alleged invention." ECF No. 29 at 22:17–18.

The database is used to store the RESPORG IDs, the buy rates, and other data of RESPORGs that participate in the toll-free exchange." ECF No. 16 at 10:34–36. The '249 patent fails to describe how the database carries out its storage functionality. This is a perilous omission because databases were "well-understood, routine, and conventional at the time of the claimed invention." ECF No. 29 at 23:1–2.

Ultimately, none of the physical elements claimed by plaintiffs are novel, unique, or inventive. They are generic hardware components arranged in a fashion described by the functional manner of their specific operations; a point not disputed by the plaintiffs. Plaintiffs instead focus their analysis under *Alice* step two on the '249 patent's detail of the deficiencies of conventional toll-free routing, the '249 patent's teaching of a novel solution specific to the problem in the conventional art, and a description of the claims in terms of their improvement over the conventional art. ECF No. 31 at 19–24. All of plaintiffs' arguments seem to be directed at demonstrating that the use of RESPORG IDs to carry out the method described by Claim 1 *is* the innovative concept. *Id.* Plaintiffs err by primarily focusing on the results of the patent rather than the language used within the patent's claims or specification. Consequently, I agree with Affinity Network that plaintiffs' arguments "are variations on the theme of plaintiffs' *Alice* step one arguments and are no more compelling in the context of *Alice* step two." ECF No. 33 at 10. Specifically, the patent's detail of deficiencies in the prior art serves only to highlight the benefits passed down to consumers of the Toll-Free Exchange: lower costs, efficiencies, etc.

Finally, I find unconvincing plaintiffs' contention that the '249 patent's use of RESPORG IDs to route toll-free calls is a non-generic innovative concept that distinguishes the patent's methods from an abstract idea. This argument does not demonstrate that use of the RESPORG IDs qualifies it as an inventive concept because it is not "significantly more than the abstract idea itself." *BASCOM*, 827 F.3d at 1349. A truly innovative concept "cannot simply be an instruction to implement or apply the abstract idea on a computer." *BASCOM*, 827 F.3d at 1349. "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). The abstract idea at the heart of the '249 patent is a method for routing calls based on the RESPORG ID of the called party—this is one and the same as the alleged innovative concept. As mentioned *supra*, RESPORGs and RESPORG IDs are not novel to plaintiffs. Neither the physical

components described by Claim 1 and the '249 patent specifications nor the concept of using RESPORG IDs to route toll-free calls sufficiently constitutes an inventive concept, such that the abstract idea claimed by Claim 1 of the '249 patent could be transformed into patent-eligible subject matter.

> B.   *The Ordered Combination of Claim Elements Does Not Provide an Inventive Concept*

Plaintiffs briefly argue that the ordered combination of claim elements in Claim 1 also constitutes an inventive concept. *See* ECF No. 31 at 23:14–17 (devoting a single sentence to the topic and stating that "[a]s an ordered configuration, the independent claims are directed to an innovative improvement over the conventional art that is specifically claimed: a toll-free network that operates outside the confines of the CIC-based [caller identification code-based] PSTN that results in reduced complexity, improved scalability, lower costs, and streamlined administration"). This analysis is deficient. At this stage in the *Alice* analysis, plaintiffs needed to assert that the ordered combination of steps within Claim 1 provides some inventive concept, not merely a recitation of the alleged benefits of a configuration of generic computer components. *See Alice*, 573 U.S. at 225–26 (finding that the claims in question did not contain an inventive concept because they did not purport to improve the functioning of the computer itself, nor did they effect an improvement in any other technology or technical field. The Court concluded that the method claims recited an abstract idea implemented on a generic computer while the system claims recited a handful of generic computer components configured to implement the same idea).

Ultimately, the order of the receiving, querying, and routing steps is a conventional ordering of steps implemented on generic technology. Regardless of the benefits provided by using RESPORG IDs over caller identification codes, the fundamental roadblock plaintiffs need to—but cannot—overcome is that the '249 patent is directed to the idea of routing calls based on the identity of the called party. They cannot cite to any language within the patent's claims

that teaches an inventive concept capable of description beyond this abstract idea. A claim for a new and beneficial abstract idea is still an abstract idea. Plaintiffs cannot describe their inventive concept without using the language of that abstraction, and for that reason, I conclude that Claim 1 is directed toward unpatentable subject matter.

### c.   Claim 1 of the '249 Patent is Representative of the Patent's Other Claims

#### i.   The Parties' Arguments

Affinity Network asserts that Claim 1 of the '249 patent is representative of all claims in the '249 patent for the purpose of analyzing subject-matter eligibility. ECF No. 29 at 10. Affinity Network contends that both other independent claims of the patent (Claims 10 and 17) are represented by Claim 1 because Claim 10 is "nearly identical to . . . Claim 1 in that it recites the exact same three steps" while Claim 17 "simply claims a system comprised of generic computing and network components that are used to perform the same method of . . . Claim 1." *Id.* at 11. They further argue that the dependent claims of the patent (Claims 2–9, 11–16, and 18–20) are represented by Claim 1. *Id.* Affinity Network notes that the dependent claims add "additional generic steps for accomplishing the claimed method" (Claims 2, 4, 5, 6, 7, 11, 12, 13, 15, 16, 19) or "additional generic components that perform their basic functions" (Claims 3, 8, 9, 14, 18, 20). *Id.* Plaintiffs aver that Affinity Network improperly characterizes Claim 1 as representative of the remainder of claims of the '249 patent. ECF No. 31 at 24. They merely note that "the remaining claims represent material and significant distinctions over Claim 1, including . . . additional improvements to the conventional art." *Id.*

#### ii.   Findings

I find that claim 1 is representative of the claims made by the '249 patent. Claim 1 reads as follows:

> **1.** A method for routing toll-free calls through a toll-free exchange, the method, performed by a policy router of the toll-free exchange, comprising:

> **receiving**, from an originating responsible organization (RESPORG), a toll-free call, wherein the toll-free call is directed to a toll-free subscriber that is served by a terminating RESPORG;
>
> **querying** a database to determine a RESPORG identification associated with the terminating RESPORG, wherein the database is associated with the toll-free exchange and stores the RESPORG identification associated with the terminating RESPORG; and
>
> **routing**, to the terminating RESPORG, the toll-free call based in part on the RESPORG identification.

ECF No. 16-1 at 15:27–40. Affinity Network argues that all twenty of the claims of the '249 patent are directed to the abstract idea of routing a call based on the identification of the called party. Plaintiffs respond that "the remaining claims represent material and significant distinctions over Claim 1, including . . . additional improvements to the conventional art." ECF No. 31 at 24. Affinity Network replies that the alleged improvements fail to demonstrate a shift in focus of any claim beyond the abstract idea captured by Representative Claim 1. ECF No. 33 at 3.

Of the twenty total claims of the '249 patent, three (Claims 1, 10, and 17) are independent claims, or claims without reference to preceding claims. *See* ECF No. 16-1 at 15–16. The others are dependent claims that reference the independent claims. Claim 1 is Affinity Network's suggested representative claim.

Claim 10 references the same three steps as Claim 1 (receiving, querying, and routing) nearly identically—it adds only the phrase "through a protected network" to the routing step. *Id.* at 15:15–28. Claim 10 does pertain to a method for routing toll-free calls without using a carrier identification code, compared to Claim 1 which does not specify whether a carrier identification code is used. *Id.* Plaintiffs have not presented any meaningful argument for the distinctive significance of whether a carrier identification code is used in the routing method. The claims are thus substantially similar. Accordingly, I find Claim 1 to be representative of Claim 10.

Claim 17 describes a system of computer and network components used to perform the method of Claim 1. *Id.* at 16. Specifically, Claim 17 describes "[a] system for routing a toll-free call

using a toll-free exchange, the system comprising [the computer and network components]." *Id.* Because Claim 17 pertains to the same underlying idea of Claim 1 by reciting systems or methods for routing toll-free calls, the claims are substantially similar. Plaintiffs have not presented any substantive argument for the distinctive significance between the system described in Claim 17 and the method described in Claim 1. As a result, I find Claim 1 to be representative of Claim 17.

The remaining claims (Claims 2–9, 11–16, and 18–20) are all dependent on Claims 1, 10, or 17. Some of them add additional steps for accomplishing the method described by the independent claims. For example, Claim 2 describes the method wherein the originating RESPORG and terminating RESPORG are enrolled in the toll-free exchange while Claim 3 describes the method wherein the RESPORG identification is obtained by a service control point. *Id.* at 15:41–45. Plaintiffs attempt to blanket all the other claims as unrepresented by Claim 1 because they "represent material distinctions over Claim 1, including with regards to additional improvements to the conventional art based on ability to route native-video and high-definition audio . . . , centralize administration . . . , and interconnect with the conventional routing networks of the prior art." ECF No. 31 at 24. However, plaintiffs do not demonstrate how those improvements represent any material difference that sets those claims apart from Claim 1. Whether video, native or not, or audio, high-definition or low, it is the idea of routing calls based on the identification of the called parties, that inheres to each claim. I find no new material suggesting some "inventive concept" with respect to the idea of routing calls based on the identification of the called parties.

> *d.*   *The '249 Patent is Patent Ineligible*

I find Claim 1 representative of independent claims 10 and 17, as well as dependent claims 2–9, 11–16, and 18–20. Because I find that Claim 1 fails the *Alice* test—as it is directed toward an abstract idea and fails to adduce an innovative concept sufficient to transform the idea into patent-eligible subject matter—I conclude that the entire '249 patent is directed toward unpatentable subject matter.

*c.   Leave to Amend*

Plaintiffs do not request leave to amend. Nonetheless, I may deny leave to amend if it would cause undue delay or prejudice to the opposing party or if the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Because plaintiffs' claims of infringement are rooted in the language of the patent's claims and specification, which I find to be directed toward unpatentable subject matter, amendment would thus be futile. *See, e.g., NEXRF*, 547 F. Supp. 3d at 993 ("[T]he Court cannot foresee any allegations [p]laintiff could add that would solve one of the key issues with the purportedly inventive steps of the asserted patent claims—that they merely 'describe the functions of the abstract idea itself, without particularity.'" (quoting *Capital One Fin. Corp.*, 850 F.3d at 1341)).

## IV.   Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that defendant Affinity Network, Inc.'s motion to dismiss **(ECF No. 29) is GRANTED**.

IT IS FURTHER ORDERED that defendant's motion to stay the case **(ECF No. 30) is DENIED** as moot.

The Clerk of Court is instructed to CLOSE THIS CASE.

DATED: October 19, 2022

_____
Cristina D. Silva
United States District Judge